IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

HERMAN STRAUSS, INC.
a West Virginia corporation,

    Plaintiff,

v.                                      Civil Action No. 5:07CV74
                                                        (STAMP)

ESMARK INCORPORATED,
a Delaware corporation,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION TO DISMISS**

## I. Procedural History

Herman Strauss, Inc. ("HSI"), a scrap recycling and supply company, filed this action against Esmark Incorporated ("Esmark") to recover damages resulting from Esmark's alleged tortious interference with scrap supply contracts between HSI and Wheeling Pittsburgh Steel Corporation ("Wheeling Pitt"). Currently before this Court is Esmark's motion to dismiss the complaint for failure to state a claim upon which relief can be granted. HSI responded in opposition to the motion and Esmark replied.

## II. Facts[1]

On April 8, 2004, HSI and Wheeling Pitt entered into three separate contracts (the "Agreements") under which HSI would provide

---

[1] For the purposes of ruling on the defendant's Federal Rule of Civil Procedure 12(b)(6) motion, this Court accepts as true all well-pleaded allegations and views the complaint in a light most favorable to the plaintiff. See Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

all of the scrap products to be used by Wheeling Pitt in its melting facilities at its Steubenville, Ohio plant. During the summer of 2005, Esmark approached Wheeling Pitt about a possible combination of their respective businesses. Esmark and Wheeling Pitt entered into a confidentiality agreement in July 2005 and, on various occasions during late 2005 and early 2006, Esmark proposed a merger with Esmark being the surviving corporation. Wheeling Pitt did not accept these merger offers.

On July 17, 2006, Esmark publically disclosed its rejected efforts to merge with Wheeling Pitt, and further announced its intention to propose a new "slate" of directors for election by Wheeling Pitt's shareholders at Wheeling Pitt's November 2006 annual meeting. On August 23, 2006, in a televised interview, Esmark's CEO, James Bouchard, stated that if the proxy contest resulted in the election of a new slate of directors and a new management team for Wheeling Pitt:

> We have an agreement in writing from one of the largest scrap companies in the United States who will be able to supply all scrap needed for the Wheeling-Pittsburgh facility. They will also come on site and start to manage that whole process for us in a more effective way than it is being managed today and they have committed to the scrap supply to handle north of 2,000,000 tons on the EAF [electric arc furnace].

(Pl.'s Compl. ¶ 19.)

At the November 17, 2006 annual meeting of Wheeling Pitt, a majority of shareholders voted in favor of the slate of directors proposed by Esmark. Thereafter, Wheeling Pitt's newly elected

2

board of directors appointed Mr. Bouchard, Esmark's CEO, as the CEO of Wheeling Pitt. The plaintiff alleges that beginning in December 2006, Wheeling Pitt began to breach the Agreements and that, finally, in March 2007, the Agreements between HSI and Wheeling Pitt were terminated.

### III. Applicable Law

In assessing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the factual allegations contained in the complaint as true. See Erikson v. Pardus, 127 S.Ct. 2197, 2200 (2007)(citing Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007)); Advanced Health Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 143 (4th Cir. 1990). The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (3d ed. 2007).

A Rule 12(b)(6) motion must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. Id. § 1356, at 298. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the

allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Id. § 1357, at 304, 310. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 127 S. Ct. at 1969.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in limited circumstances. Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989). A dismissal under Rule 12(b)(6) is granted only in cases in which the facts as alleged in the complaint clearly demonstrate that the plaintiff does not state a claim and is not entitled to relief under the law. 5A Wright & Miller, supra § 1357, at 344-45.

## IV. Discussion

Esmark argues that HSI's complaint must be dismissed because it fails to state a claim upon which relief can be granted and because it fails to meet the minimum pleading requirements recently set forth by the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007). For the reasons below, each of the defendant's arguments fails to support dismissal of this action.

A. The Pleading Requirements of Twombly

Recently, in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the United States Supreme Court addressed the sufficiency

of an antitrust complaint pursuant to Federal Rule of Civil Procedure 8(a)(2). The class of plaintiffs in Twombly alleged that major telecommunications providers engaged in parallel conduct indicative of a conspiracy to restrain trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. In reviewing the plaintiffs' complaint, the Court utilized a "plausibility standard," id. at 1968, under which a complaint must contain "enough facts to state a claim to relief that is plausible on its face," id. at 1974. The Court rejected the often-quoted language from its decision in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that dismissal under Rule 12(b)(6) is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court stated that Conley's "no set of facts" language "earned its retirement" because it had spawned among courts the unintended literal reading that "any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings." Twombly, 127 S. Ct. at 1968.

In the wake of Twombly, uncertainty exists regarding the level of pleading required to satisfy Rule 8, which prior to Twombly was understood as requiring pure notice pleading in all manner of cases except those identified in Rule 9. See Anderson v. Sara Lee Corp., 508 F.3d 181, 188 n.7 (4th Cir. 2007)("courts and commentators have been grappling with the decision's meaning and reach"); Iqbal v.

5

Hasty, 490 F.3d 143 (2d Cir. 2007)("[c]onsiderable uncertainty concerning the standard for assessing the adequacy of pleadings has recently been created by the Supreme Court's decision in [Twombly]"). Specifically, it is unclear whether Twombly alters the pleading standard only for complex antitrust cases or whether it has a broader application. The United States Court of Appeals for the Fourth Circuit has not yet offered guidance regarding the reach of Twombly. In disposing of Esmark's motion to dismiss, however, it is unnecessary for this Court to resolve the question. Even assuming, as Esmark argues, that Twombly requires courts to use a plausibility standard in all cases, HSI's complaint does not fail to meet that standard.

A review of the complaint reveals that HSI has met its obligation to "provide the 'grounds' of [its] 'entitlement to relief'" by setting forth "more than labels and conclusions, and a formulaic recitation of the elements . . . ." Twombly, 127 S. Ct. 1965. The plaintiff alleges that HSI and Wheeling Pitt entered into certain contractual agreements for the supply of scrap metal (Pl.'s Compl. ¶ 13) and that Esmark intentionally interfered with the contractual relationship by obtaining a written agreement from one or more scrap companies to replace HSI as Wheeling Pitt's scrap supplier, by publically announcing its intention to restructure Wheeling Pitt's scrap supply relationship, and by inducing Wheeling Pitt to breach the Agreements (Pl.'s Compl. ¶¶ 19-21). The

plaintiff also alleges that the alleged acts of interference caused Wheeling Pitt to breach and ultimately terminate the Agreements (Pl's Compl. ¶¶ 23, 27-35) and that HSI suffered $ 18,400,638.56 in damages (Pl's Compl. ¶¶ 36-37). These allegations set forth sufficient facts to state a claim for tortious interference that is plausible on its face. See Torbett v. Wheeling Dollar Savings & Trust Co., 314 S.E.2d 166, 173 (W. Va. 1984)(setting forth elements for claim of tortious interference).

B.  HSI's Claim for Tortious Interference

Under West Virginia law, a claim for tortious interference with a contractual relationship requires four elements: (1) the existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside of that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages. Torbett, 314 S.E.2d at 173.

Esmark contends that HSI's complaint must fail because HSI cannot establish the second element of a claim for tortious interference. First, Esmark argues that it could not, as a matter of law, tortuously interfere with the contractual relationship between HSI and Wheeling Pitt because Esmark CEO James Bouchard became a party to the Agreements when Mr. Bouchard was appointed as the new CEO of Wheeling Pitt. Second, Esmark asserts that HSI has failed to allege any intentional act of tortious interference on the part of Esmark.

The defendant is correct that, as a general rule, only a party outside of a contractual relationship can be liable for tortious interference. See id. In this case, however, Esmark was not a party to the Agreements between HSI and Wheeling Pitt. Even accepting for the sake of argument that Mr. Bouchard's status as the new CEO of Wheeling Pitt caused Esmark, another corporation of which he is CEO, to become a party to the Agreements, HSI alleges intentional acts of interference occurring before Mr. Bouchard was appointed CEO of Wheeling Pitt.

The defendant's second argument is also without merit. Esmark contends that HSI has failed to allege any concrete, intentional act of interference on the part of Esmark. A review of the complaint, however, shows that HSI has alleged that Esmark committed acts of intentional interference by obtaining a replacement contract for Wheeling Pitt's scrap supply and by publically announcing its intention to restructure Wheeling Pitt's scrap supply relationship. (Pl.'s Compl. ¶ 21). To the extent that Esmark argues that the public statement made by James Bouchard in August 2006 does not constitute an act of interference, such argument fails. It is well-established that a statement can constitute an act of interference. See Garrison v. Herbert J. Thomas Memorial Hosp. Ass'n, 438 S.E.2d 6, 14 (W. Va. 1993) (intentional act of interference can consist of statements or writings); Restatement (Second) of Torts § 766 cmt. k (recognizing

interference by statement and noting that there is no technical requirement as to the means of interference or kind of conduct that may result in interference). The allegations of intentional acts that the plaintiff has set forth in its complaint are therefore sufficient to state a claim.

Finally, Esmark contends that HSI's complaint must be dismissed because Esmark has an affirmative defense to the plaintiff's claim that is apparent on the face of the complaint. Specifically, Esmark argues that it cannot be liable for tortious interference because it possesses a financial interest in Wheeling Pitt. The existence of a financial interest in the induced party's business is an affirmative defense to a tortious interference claim. See Garrison, 438 S.E.2d at 13 (recognizing affirmative defense where defendant has a financial interest in the induced party's business). However, in order for an affirmative defense to constitute grounds for dismissal on the basis of a Rule 12(b)(6) motion, the defense must "clearly appear[] on the face of the complaint." Suarez Corp. Indus. v. McGraw, 125 F.3d 222, 229 (4th Cir. 1997).

The complaint in this case does not reveal a clear financial interest in Wheeling Pitt on the part of Esmark. Prior to November 2006, when Mr. Bouchard was appointed as Wheeling Pitt's new CEO, Esmark merely hoped to have a financial interest in Wheeling Pitt. Indeed, during the time period prior to Mr. Bouchard's appointment,

9

in which at least some of the acts of tortious interference are alleged, it is clear from the face of the complaint that Esmark had only a potential financial interest in Wheeling Pitt. Therefore, because Esmark's asserted defense does not clearly appear on the face of the complaint, it is inappropriate to address the defense upon a Rule 12(b)(6) motion.

## V. Conclusion

Following review of the motion to dismiss and the response and reply thereto, this Court concludes that the defendant's motion to dismiss must be DENIED. The defendant's request for oral argument is also DENIED because the briefs submitted by counsel for the plaintiff and the defendant were sufficient to aid this Court's decision.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED: February 4, 2008

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE